May it please the court my name is Jeremy Gutman and I represent appellant Teddy Santana. In his pretrial suppression motion Mr. Santana raised a number of questions about the credibility of the police detective Mr. Detective Borgia based on inconsistencies and other dubious aspects of testimony and statements he had previously made in connection with state court proceedings before this case came to federal court. There's no indication that the district court in resolving the initial issue of probable cause actually assessed credibility of detective Borgia based on any of those things that had been presented by the defense. Subsequently the court was faced with a substantial contradiction between the facts that had been relied upon to determine probable cause and the testimony of a witness who appeared at trial. The probable cause was based on Borgia's claim that the sister of a deceased heroin user Christine Cooley had told Borgia that the person on her sister's cell phone who corresponded to Mr. Santana that he was her recent drug supplier who had previously delivered drugs to her house and it was based on that representation and that testimony by Borgia about what he was told that the court was able to conclude that when Santana in fact went to the neighborhood in response to text messages that it was reasonable to conclude from that that he was there for the purpose of delivering heroin. But there was more to it than just that description which the Cooley letter said she didn't give that kind of description. They sent these phony text messages, Borgia sent the phony text messages to Santana for the drug transaction, come over my house, he shows up with someone else at her house in the parking lot and they go up to him and he's got heroin on him for sale in packaged materials. How is that? Even saying he got the description of Santana wrong or she didn't give it, so what? He got all these text messages between the decedent's cell phone and Santana which suggested she's doing a buy even though she's gone. He shows up, he's texting with her, I'm on my way, he arrives in the near her home with heroin. How does the bad description, even if it's true that either she recants or didn't give, how does that eviscerate the other probable cause? Well, first of all, the contradiction isn't simply that she didn't provide the description because she'd never seen him as the detective had claimed. The more I reviewed the cell phone with the detective and I pointed out certain people who were potential heroin dealers. That was her testimony, not that I knew for a fact that this was someone who had delivered heroin to the house. And that I to heroin is in drug lingo. There's a whole bun. A whole bun. A bundle. Exactly. I'm a little short. You don't have to have a translator to say, well, it sounds like a drug deal that's going down. Would you agree with that? Well, based on my experience in... Is that like what movie do you want to watch tonight? Well, precisely what the understanding... I mean, the thing is, there's an assumption that I think Your Honor is able to make and I'm able to make based on some familiarity with other cases involving drugs. If all we know about the is there. That supports a suspicion that he knew they were talking about drugs, but it's a very imprecise way of looking at this. And what... But all we're wrestling with is probable cause, right? I don't mean that demeaningly, but... Well... But to... I mean, it's how much do we need? What more do we need beyond that for the officer to have probable cause? I believe in this context where there's... Where a whole bun is in a text message and people don't necessarily speak so elaborately. I mean, there are lots of text message communications that aren't immediately intelligible. So what that meant, I think... It wasn't AWB, right? I would certainly submit that it is not enough. And again, the reliance on... The court very specifically relied on, he has previously delivered to this house, to the sister, he is her drug supplier. And the reliance on that was contradictions. And what we're asking the court to recognize and to hold is, I think, a fairly... Not a big ask, which is that the court should hold that to adjudicate a person's Fourth Amendment rights, whether they've been violated, there should be a consideration of the credibility of the witness who's the source of the probable cause determination. Here there were multiple, not just that contradiction, but in our brief we detailed numerous other contradictions and dubious aspects, including that he gave the suspected drug dealer his phone so he could call his boss, another drug dealer, to tell him he was okay. And many other things, that the apparent intrusions into the phone were what he referred to as butt texts. And again, I don't have time to go through all of them. I have just one question, or set of questions. Are you challenging the use of evidence that was obtained from the cell phone? Well, we're challenging that derivatively, in the sense that... Well, also, if the phone was seized illegally as part of an arrest without probable cause, everything from the phone must be suppressed. So the... Even though they had a warrant, which you have not challenged, to look at the contents of the phone and lay it out for the issuer? Well, as we pointed out, that did depend on the same, many of the same allegations. But in addition to that, had there not been an arrest, there wouldn't have been a seizure of the phone, there wouldn't have been an application for a warrant. Thank you. We'll hear from Mr. Rose. Good morning, Your Honors. May it please the Court. My name is Charlie Rose. I'm an attorney with the Eastern District of New York. Nothing that defense counsel, I respectfully submit, said here or in their papers would warrant this Court to remand for further proceedings. There are two main issues here. One, under the totality of the circumstances, was there probable cause for the arrest? The second one is based on the Court's rulings below, was there an abuse of discretion not to reconsider for a second time whether the detective's credibility should be assessed a second time at trial? With respect to the first issue, obviously, the government says clearly there was probable cause here. And with respect to the second, the Court should not remand for any reconsideration. The district court considered this issue on multiple occasions, suppression hearing, reopening the suppression hearing, heard testimony at trial, and also heard the same arguments in the new trial brief. With respect to defense counsel on appeal, he said basically that the assumption and all that we knew was X, Y, and Z. Well, the facts in the brief and as presented here, we're talking about an experienced narcotics detective who had received face-to-face information from an informant who happened to be the deceased victim's sister. She pointed out a contact in the information to the detective. She gave information. In their brief, the defendant says that based on that mere hunch or that in and of itself was not sufficient. They declined to go into the fact that nine days later, the detective, independent of that evidence, conducted an investigation using the phone and using that information. They weren't relying just on that information. He sought to corroborate that information. So what he did is he sent the text messages. And he sent text messages that he knew that a drug dealer who had a prior relationship with the deceased would respond to. So he used jargon, a whole bun, he asked price, and then he asked if the person would come to him. Without putting in an address or anything like that, the defendant shows up, and he shows up and pulls up in front of the house. Now, at that point, again, the detective didn't just run over there and arrest him at that point. There was furthermore. He then directs the defendant to a separate location. The defendant goes to that location. The detective pulls into the parking lot. The defendant then gets out of his vehicle and walks towards the police car. And then he gets detained, and he's arrested and found in possession of the exact quantity of heroin that had been requested. So the whole bun. And actually, there was a different thing. There was two whole buns, there was 18 glassine baggies, and then there were additional quantities of foil that was wrapped separately. So there was actually more than was required for sale. Those were found in an incident-to-arrest search, right? Correct. When they went back to the station and searched it. The drugs were found, yes, incident-to-arrest back at the station. They didn't search. The drugs were in the defendant's underwear.  So they didn't search him at the scene. So we have those facts in their totality that support a probable cause determination. The countervailing facts that the defendant claims would draw into question the credibility of Detective Borgia are not availing. And they started in the State court where they made certain assertions. Once they failed that, they brought it to the Federal suppression motion. At that time, the defendant, who ultimately was determined to be giving perjurous testimony at trial by the district court, he comes up with what amounts to be a fanciful argument as to why, you know, the search should be suppressed by claiming that the detective insta-hacked the defendant's phone and guessed his password, a four-digit password at random, and just so happened to be 1234. So it's, you know, to base that against the credibility of the detective, who, again, the court, the Federal court, in addition to the State court, had ample opportunity to assess the credibility of the detective. He testified in the State grand jury, as did the defendant. The State grand jury indicted the defendant. He testified in the State suppression hearing, as did the defendant.  The suppression motion was denied. The defendant submits an affidavit in support of his Federal suppression motion. The detective testifies. Again, the court assessed his credibility in those circumstances and assessed necessarily that Detective Borgia was being truthful and that the defendant was not being truthful. The court then agreed on the literally at 1155, I think, p.m., the night before trial was supposed to start, the defense counsel filed a motion to seek to reopen the detective based on perceived claims about phone evidence that ultimately turned out to be not true. The court reassessed, called back in the detective to hear further testimony about the detective, and again, necessarily determined that nothing that the detective said was contradicted by any perceived inaccuracies or anything that was wrong, whether it came from the Kuhlins or anything else that he said. There was no issue that obviated or eviscerated probable cause at any point in time. And once the court made that determination, having made it before, having made it then, the issue was then raised again at trial, again, based on the same evidence that was introduced previously. The defendant offered up, again, the perceived intractability between Kuhlins' testimony on trial and the detective's. And although the court did not make a distinction that what the court did say in ruling not to reopen the motion was that even if she found that it did contradict, but she said it did not, Judge Sybert said it did not contradict, but even if it did contradict, the court did not make a distinction that what the court did say in ruling not to reopen the motion was that even if she found that it did not contradict, but she said it did not contradict, but even if she said it did not contradict, if the sister was aware who the deceased was getting the drugs from, she could have mentioned it in passing. That question was never asked. So certainly there's nothing that contradicts the fact, and in the record, I think what they stress is that Kuline identified potential heroin dealers. Well, that's entirely consistent with what Detective Borges said. So if that's the basis for them to say you have to reopen this during trial, frankly, it goes way beyond what the court would have to consider, having already assessed those factors previously. To the extent that the remedy sought here is that they want to get the determination of credibility yet again from the district court. Frankly, the court has evaluated the suppression motion. They've reopened. They heard testimony at trial. And they also had the new trial motion, which they decided. I see my time is up. May I brief you?  You've got another two minutes. Waxman. Sorry, Your Honor. Scalia. That's just your warning light. Waxman. Sorry. So the court already assessed that information on multiple occasions. And not only did the — I mean, it's bolstering, but the jury found, you know, when the defendant testified and tried to call into question Detective Borges' credibility, that went to the jury. The jury there also rejected the idea that Detective Borges was not being truthful, because without Detective Borges' testimony, it undercuts the validity of the arrest. So I think there, the idea that this should be remanded for yet another determination of what the courts have already determined on multiple occasions, which is in concert with what the State judge found, with what the Petit jury found, and obviously what the grand jury found, I don't think is warranted. Judge Seibert was the judge on both the suppression motion and at trial. I know she was at trial. Yes. Yes, Your Honor. Okay. Thank you. No further questions. We'll rely on our papers. Thank you. Thank you. Mr. Gottman. The government says that Judge Seibert repeatedly assessed the credibility of Detective Borges. That is not supported by the record. And in fact, particularly after the contradiction came from Christine's testimony at trial, Judge Seibert said, essentially, I'm powerless to look at the credibility. The way she put it was, I'm not the 13th juror. But she was the sole fact finder with regard to probable cause. And she, rather than addressing credibility, as she had previously when issues had come up, she formulated that even if I found there were intentional perjury, it wouldn't change the outcome. We submit that's essentially an abdication of the role of a federal judge. And— So do we—are we—I'll back up. Essentially, the rule you want us to announce is that whenever the credibility of the key witness in a suppression motion is called into question by the testimony of another witness, the court, upon request of the defendant or whoever it is that's been subject to the seizure that you're seeking to suppress, has to engage in a further hearing. Well, I think if the contradiction is one that appears to undermine the basis upon which the determination of probable cause was made. And the significance of Christine's testimony at trial, I think, can be inferred from the fact that the government, neither in its brief or in its argument today, has addressed the actual testimony, particularly that she said, all I told the detective was that these are names. And she didn't even say she pointed out Santana's name in the phone book as the most likely or anything like that. She said, I pointed out people who were potentially heroin dealers. And, again, that is a contradiction that is a weighty contradiction of the basis that the court relied on, which was Borgia's testimony, that he was told there was a prior relationship that involved Santana delivering drugs to the house. This was known by the mother and the sister. And ---- Did Borgia try to set up other drug dealers that were identified by Christine? There's no ---- I don't have any information about that. It's not in the record at this point. It's not in the record, no. The other thing, just it occurs to me, what was the time that had passed between essentially when the investigation arrest went down and the time that the sister testified at trial? I ---- Give me a rough estimate. It was ---- Months. I would say months, the following year probably. But I'm not sure that that's significant. Yeah, no, I understand that. And we could go figure that out, I think, obviously, from the numbers in the record. But it was a significant period of time. It was. It was at least several months. And ---- No, you did not get to trial in several months after an arrest over the years. Right. No, it was, right. And there was the transfer from State to Federal. So I don't have the dates in front of me. But it was a substantial amount of time. Nonetheless, the testimony, you know, again, the issue is not whether ---- This wasn't brought under the rubric of newly discovered evidence. No, no, I understand that. But memories fade over time. I think we could probably take judicial notice of that. Speaking for myself, I can certainly say that. Anyway, thank you, Mr. Gutman. Thank you both. Mr. Rose, thank you.